UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

           Plaintiff,                      Case No. 2:23-cv-11339
                                                  Hon. David M. Lawson

v

KHURSHEED ASH-SHAFII

           Defendant.

| | |
|---|---|
| Robin H. Kyle (P33330) | O'REILLY RANCILIO P.C. |
| Attorney for Plaintiff | Marc D. Kaszubski (P60333) |
| 8120 E. Jefferson Avenue, Suite 3E | Nathan D. Petrusak (P75359) |
| Detroit, MI 48214 | Scott R. Ruark (P81336) |
| (313) 469-7322/(313)-492-2691 | Attorneys for Defendant |
| robinhkyle@comcast.net | 12900 Hall Road, Suite 350 |
| | Sterling Heights, MI 48313 |
| | (586) 726-1000/Fax: (586) 726-1560 |
| | mkaszubski@orlaw.com |
| | npetrusak@orlaw.com |
| | sruark@orlaw.com |

**DEFENDANTS' MOTION *IN LIMINE* TO STRIKE EXPERT REPORT AND PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAMEER SOMAL**

Defendant, Khursheed Ash-Shafii, by and through his attorneys, O'Reilly Rancilio P.C., states for his Motion in Limine to Strike Expert Report and Preclude Testimony of Plaintiff's Expert Sameer Somal as follows:

1.      Pursuant to L.R. 7.1(a), the undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief sought by way of this motion, seeking concurrence in the relief, and requesting a conference regarding

the relief sought.  Concurrence was denied, in writing, by Plaintiff's counsel, with Plaintiff's counsel stating that a conference would not change Plaintiff's response.

2.      Plaintiff has filed a Complaint alleging Highland Park City Council Member Khursheed Ash-Shafii defamed him at an April 3, 2023 City Council meeting, alleging that "Plaintiff stole or misappropriated forfeiture funds from the Highland Park Police Department." (Pl.'s Compl. ¶ 23.)

3.      Plaintiff's Complaint also alleges that the above statement was made by Councilman Ash-Shafii in retaliation for Plaintiff's "filing and securing a settlement from Defendant in Case No. 21-cv-10152" in violation of the First Amendment. (Id. at ¶ 41.)

4.      Plaintiff has retained a damages "expert" Sameer Somal, who has authored a report opining that Plaintiff has $1.5 Million in economic, online rehabilitation, reputation, and emotional distress damages.

5.      Mr. Somal's report is bereft of any reliability or methodology and his report must be stricken and his testimony precluded under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

WHEREFORE, the Defendant, Khursheed Ash-Shafii, respectfully request this Honorable Court:

    a.  Enter an Order granting Defendant's Motion in Limine to Strike Expert Report and Preclude Testimony of Plaintiff's Expert Sameer Somal; and

    b.  Enter an Order awarding the Defendant any other relief the Court deems just and equitable.

Respectfully submitted,

O'REILLY RANCILIO P.C.

By: /s/ Nathan D. Petrusak
        Marc D. Kaszubski (P60333)
        Nathan D. Petrusak (P75359)
        Attorneys for Defendant
        12900 Hall Road, Suite 350
        Sterling Heights, MI 48313
        (586) 726-1000
        mkaszubski@orlaw.com
        npetrusak@orlaw.com
Dated: January 13, 2025        sruark@orlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

        Plaintiff,                        Case No. 2:23-cv-11339
                                              Hon. David M. Lawson

v

KHURSHEED ASH-SHAFII

        Defendant.

| | |
|---|---|
| Robin H. Kyle (P33330) | O'REILLY RANCILIO P.C. |
| Attorney for Plaintiff | Marc D. Kaszubski (P60333) |
| 8120 E. Jefferson Avenue, Suite 3E | Nathan D. Petrusak (P75359) |
| Detroit, MI 48214 | Scott R. Ruark (P81336) |
| (313) 469-7322/(313)-492-2691 | Attorneys for Defendant |
| robinhkyle@comcast.net | 12900 Hall Road, Suite 350 |
| | Sterling Heights, MI 48313 |
| | (586) 726-1000/Fax: (586) 726-1560 |
| | mkaszubski@orlaw.com |
| | npetrusak@orlaw.com |
| | sruark@orlaw.com |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO STRIKE EXPERT REPORT AND PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAMEER SOMAL**

## TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ....................................................................................... iii

INDEX OF APPENDICES ......................................................................................... v

STATEMENT OF ISSUES PRESENTED ........................................................... vi

I.   INTRODUCTION ............................................................................................ 1

II. STATEMENT OF RELEVANT FACTS ........................................................ 1

III.   LAW AND ARGUMENT ............................................................................... 8

IV. REQUESTED RELIEF ............................................................................... 13

## INDEX OF AUTHORITIES

Cases                                                                                    Page(s)

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ................................. 8, 9, 10, 11

*In re Scrap Metal Antitrust Litig.,*
   527 F.3d 517 (6th Cir. 2008) ................................................................................. 10, 11

*In re Southeastern Milk Antitrust Litigation,*
   739 F.3d 262 (6th Cir. 2014) ....................................................................................... 9

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999) ................................................................................................ 9, 11

*Newell Rubbermaid, Inc. v. Raymond Corp.,*
   676 F.3d 521 (6th Cir. 2012) ....................................................................................... 10

*Pluck v. BP Oil Pipeline Co.,*
   640 F.3d 671 (6th Cir. 2011) ....................................................................................... 10

*Smelser v. Norfolk S. Ry. Co.,*
   105 F.3d 299 (6th Cir.1997) ........................................................................................ 10

*Tamraz v. Lincoln Elec. Co.,*
   620 F.3d 665 (6th Cir. 2010) ....................................................................................... 10

*Thomas v. Novartis Pharms. Corp.,*
   443 F. App'x 58 (6th Cir. 2011) ................................................................................... 11

*United States v. Gissantaner,*
   990 F.3d 457 (6th Cir. 2021) ......................................................................................... 9

*United States v. Melcher,*
   672 F. App'x 547 (6th Cir. 2016) ................................................................................. 11

*United States v. Stafford,*
   721 F.3d 380 (6th Cir. 2013) ....................................................................................... 10

*Woods v. Lecureux,*
110 F.3d 1215 (6th Cir. 1997) ........................................................................ 11

## INDEX OF APPENDICES

App'x  A       Somal Report

App'x B        Menge Dep. Tr.

App'x C        Whittie Dep. Tr.

App'x D        Somal Dep. Tr.

App'x E        2022 and 2023 Schedule C

## STATEMENT OF ISSUES PRESENTED

1. WHETHER THE EXPERT REPORT AND TESTIMONY OF SAMEER SOMAL SHOULD BE STRICKEN AND PRECLUDED UNDER FRE 702?

   DEFENDANT ANSWERS: YES.

   PLAINTIFF PRESUMPTIVELY ANSWERS: NO.

## I.      INTRODUCTION

This Court should exclude Sameer Somal's evidence because it is unreliable and baseless. While Plaintiff purports to offer Mr. Somal as a "damages" expert, Somal simply provides a series of unsubstantiated and unscientific calculations based on supposed "legal precedents" with *zero* factual or methodological support in order to arrive at an astounding $1.5 Million damage figure. Setting aside the sheer absurdity of the proposed damage figures, Mr. Somal's report and testimony do not survive *Daubert* scrutiny for numerous reasons. First, Mr. Somal is not qualified to opine on the law or Plaintiff's claimed emotional distress, as he is neither a lawyer nor a doctor. Mr. Somal has a B.A. in finance and his experience is in digital marketing. Second, Mr. Somal's "methodology" is not just unreliable, it is non-existent. Mr. Somal's damage figures are the product of his non-legal review of the outcomes of various unrelated legal cases and his outright *speculation* as to harm by way of "facts" for which there is *zero* evidence. Third, Mr. Somal's opinions would not, in anyway, assist a jury. For these reasons, the Court should strike Mr. Somal's report and preclude his testimony at trial.

## II.      STATEMENT OF RELEVANT FACTS

Plaintiff's Complaint asserts two causes of action: 1) a state law defamation claim, and 2) a First Amendment retaliation claim where defamation was the *sole* "adverse action." The "defamation" at issue is a *single statement* made by Highland Park City Councilman Khursheed Ash-Shafii during the "Council Affairs" agenda item of the April 3, 2023 City Council Meeting. His statement, without naming Plaintiff, was that the City should not bring

back a police officer who was "caught stealing forfeiture funds." Plaintiff alleges that this statement was defamatory and that it has harmed his reputation and his private investigator business. However, Plaintiff has no evidence of anything more than *de minimis* harm. Plaintiff's expert, Mr. Somal, arrived at his outlandish $1.5 Million in damages based on no data and after not reviewing any testimony or financial records, both of which establish there has been no harm done.

In his report, Mr. Somal opines that Plaintiff "has incurred significant damages resulting from the defamatory, cancel culture style accusations made by the Defendants, consisting of (a) Economic, (b) Rehabilitative, (c) Reputational, and (d) Emotional Distress." Mr. Somal then breaks down those categories as follows:

Economic Damages: "Economic Damages: in the form of lost projects in the capacity of an independent investigator, opportunities to grow his practice up to this time and the loss he would continue to suffer (in the next three years conservatively) to be in excess of at least $283,500." (App'x A, Somal Report, p. 6.) Later on in the report, Mr. Somal claims that Menge lost work from an attorney client (Dennis Whittie) of between $9,000 and $10,000 and, moreover, that Plaintiff "lost a significant chunk of his income which he would ordinarily gain from his freelance work as an investigator. Since his work as a freelancer is dependent on his reputation, which is now tarnished due to the defamation, his personal business has also taken a hit." (*Id.*at p. 69.) Mr. Somal then proceeds to guesstimate that Plaintiff lost working

2

for between 8 and 10 attorneys each of whom would have referred him 6 to 8 projects a year, for damages totaling $283,500:

> I conservatively estimate that Mr. Menge has lost the opportunity of working with at least 8 - 10 attorneys over the course of this incident. His usual flat fee for a 10-hour investigation project is $1,000. He charges extra for every project exceeding that time frame. Considering the same, I estimate that he has lost at least if not more than 6 - 8 projects coming from each attorney yearly.
>
> That will mean losing projects worth: [8 x (7x$1,000) – 10 x (7x$1,000)] = $56,000 – $70,000 yearly.
>
> The cause of action arose in March of 2023 which translates into lost opportunities of almost $84,000 - $105,000 to this date.
>
> Over the next three years, I estimate that economic damages in lost income will amount to: 3 x ($56,000 – $70,000) = $168,000 - $210,000.
>
> Therefore, in my opinion, the economic damages in the form of Mr. Menge's lost projects, opportunities to grow his practice up to this time and the loss he would continue to suffer (in the next three years conservatively) are in excess of atleast $283,500.

(*Id.*) These damages figures are pure, unadulterated speculation, which Mr. Somal would know are in accurate if had he reviewed any evidence in this case.

For example, Mr. Somal *did not* review Plaintiff's deposition transcript. If he had, Mr. Somal would know that no one, except for Mr. Whittie, has told Plaintiff they are not using his services because of Councilman Ash-Shafii's statement. (App'x B, Menge Dep. Tr. p.153:12-25; 154:1-6.) Mr. Somal would also know that Plaintiff is not aware of *anyone* who believed Councilman Ash-Shafii's statement and that "everybody knows that [Ash-Shafii's] lying and it was false and fake." (*Id.* at p. 182:3-13.) Mr. Somal also did not review Mr. Whittie's deposition transcript. If he had, Mr. Somal would know that the number of cases that Mr. Whittie claims he did not refer to Plaintiff because of the statement was 2, not 9 to 10, and that Mr. Whittie then resumed using Plaintiff's services, *exclusively*. (App'x C, Whittie Dep. Tr. p. 63:6-10.)

Mr. Somal did not review the hundreds of Requests for Payment Plaintiff submits for his private investigator services, all of which are in Plaintiff's possession and have been produced in discovery, which show the litany of attorneys Plainitff does work for and what Plaintiff makes for each case:

```
    Q    So you were not provided with any invoices,
or as we call them -- they've been called in this case
RFPs, meaning a request for payment.  You've not seen
any such documents?
    A    I think Whittie gave us a few flat-fee
projects maybe.  I -- but no, I -- I didn't get -- I
did not get the proverbial RFPs.  No, sir.
```

(App'x D, Somal Dep. Tr. p. 58:15-21.) Finally, Mr. Somal did not review Plaintiff's 2023 tax return, which shows that his private investigation business had gross receipts of $187,976, as compared to $55,613 in 2022. (App'x E, 2022 and 2023 Schedule C.) As a damages "expert," one would think that this information would be indispensable. In fact, Mr. Somal reported that in 2024, Plaintiff has handled 158 cases and approximately $1,000 per case or $158,000. (App'x D, p. 64.) So, with 5 full months remaining in 2024 at the time his report was issued, Plaintiff had already done 84% of the gross receipts he had done in 2023. So where is Mr. Somal getting his $283,500 in economic damages from? They don't exist. Everything in Mr. Somal report is speculative. He says "the defamatory statement **could** have enduring effects on Mr. Menge's career Trajectory and future opportunities." (App'x A, p. 69) (emphasis added.) He says "Considering that Mr. Menge often worked and partnered with other attorneys . . . this incident **may** discourage them to hire him for other projects." (*Id.* at p. 68) (emphasis added.) Coulds and mays, that is all Mr. Somal offers. No data, no methodologies.

Rehabilitation Damages: Mr. Somal also opines that Plaintiff has "Rehabilitative damages that are needed to restore trust in Mr. Menge's professional integrity by creating a definitively positive reputation for those who were offered a negative perception form the false statements." (*Id.* at p. 70.) For this, Mr. Somal guestimates that a 12 to 18 month campaign will be needed at the cost of $180,000. (*Id.*at p. 71.) But what's the methodology here? The Facebook video of the April 3, 2023 City Council meeting has less than 300 views, and Plaintiff acknowledges that "everybody knows that [Ash-Shafii's] lying and it was false and fake." (App'x B, p. 182:3-13.) Mr. Somal was specifically asked about his methodology during his deposition because his report does not include any information that Councilman Ash-Shafii's comment has spread online or can even be discovered by searching. What came out at the deposition was that Mr. Somal did not look at any search results to determine that the statement was even "out there." The following exchange speaks for itself:

> Q     When you Google Mr. Menge, what's on the
> first page?
> A     You know, again, are you Googling -- what
> exactly are you looking at?  I mean, just Googling
> Brian Menge?  Are you looking at the county?  I mean,
> there's so many factors here that --
> Q     Did you search any of it?  That's what I'm
> trying to understand.  Do Mr. Councilman Ash-Shafii's
> comments come up in any online search that are not
> associated with Mr. Menge's filing of this lawsuit?
> A     Counsel, what I do know, that anyone who
> were to hear about this, I know that, of course,
> Casetext comes up.  And anytime somebody were to find
> out that there is something that has taken place, they
> would be able to find Councilman Ash-Shafii's
> statements --

Q    Did you search for them?

A    I've, of course, done a search on the various -- and -- and I believe -- again, I -- I don't know if I commented on this, but we could also look at the -- the auto suggestions associated with Mr. Menge.

But the information supporting the fact that he's been accused of being a thief is -- is out there. And I know that -- I believe the expert -- I mean, I -- I played it earlier, his -- his point.  So there's all sorts of ways to -- I'm sorry?

Q    No, I'm just trying to figure out, when you say, "It's out there," where is it?  Because you're talking about the need of a very expensive campaign of online rehabilitation, which, of course, assumes that an online reputation needs to be rehabilitated.

So I'm trying to understand what -- where is it online that needs rehabilitation?  Where is this information even discernible on any search?  If you search Councilman Ash-Shafii, does it come up?  If you search Brian Menge, does it come up?  If you search Ash-Shafii and Brian Menge, does it come up?  Where does it come up?

A    You know, I -- if you want me to do some searches here, I -- I can, but that -- that wasn't necessarily a part of what -- I mean, if you want me to pull up Google and you can tell me the word search, if that's what you're asking --

(App'x D, p. 83:6-25; 84:1-23.)

<u>Reputational Harm</u>: Mr. Somal also states that Plaintiff has an eye-popping $500,000 to $750,000 in reputational damages. Yet, again, he has no basis for it. If almost no one heard the statement, and those who did knew it to be a lie (according to Plaintiff), then how has Plaintiff's reputation ben harmed? Mr. Somal was asked about his methodology for reputational harm and his answer was the equivalent of him saying "trust me, I'm an expert:"

6

So those things all, you know, come down to the fact that I -- I believe that damages are presumed here. I believe that this is a very obvious case of somebody making harmful statements and not -- I guess to date has -- has proven that those statements -- and not just, again, calling someone a liar, calling them -- them a thief.

So I believe, and it is of my opinion, that if this case, hopefully, were to go to trial, that this is a case, given the -- the malice and the carelessness of the accusations in compromising somebody's reputation, that they're, in fact, worthy of compensatory damages.

. . .

And -- and that's why I provide a range of damages because I believe it's my job to put forth why this is important, especially when you look at other cases where there has been harm. And that's up to the judge and jury to decide.

And that's why I put a range of damages, not a definitive number. But I -- I -- again, I -- I would challenge -- being a litigation consultant, not making a legal opinion -- at the heart of this is that he was accused of embezzling funds with a confident "there's proof." No proof is given. That is the definition of -- of defamation.

. . .

So I -- I, again, see this as an obvious case based upon my work as a litigation consultant where compensatory damages have been awarded, and they should be awarded here.

(*Id.* at pp. 120-124.)

<u>Emotional Distress</u>: Though not a doctor, Mr. Somal also opines that "Mr. Menge has suffered significant emotional distress as a result of the defamatory statements" and "[i]n similar cases I have been retained, and in examining the consequences, a fair and reasonable award for

Mr. Menge's emotional distress would range from $250,000 - $300,000." (App'x A, p. 74.) Yet,

during his deposition he stated that he will not opine on emotional distress damages at trial:

```
        Q    All right.  Have you been allowed in any
prior case to testify as an expert witness regarding
emotional distress damages?
        A    Again, my recommendation through the report
is I -- I would not proffer in the court of law a -- I
would not testify to emotional distress damages.
             It is my opinion -- not making a medical --
not making a medical one -- through my experience
having worked with clients who are harmed in a similar
rite that it does indeed harm their reputation.
             And I believe that that should be an element
of damages.  But I won't be offering testimony on that
in court.
```

(App'x D, p. 38:6-18.) This makes it easy for this portion of this testimony to be excluded.

However, the fact that it was included in the first place shows his damage figures for what

they are—make believe.

Aside from the above issues, Mr. Somal's 75-page report it literally littered with legal

conclusions about Councilman Ash-Shafii's statement being "defamatory" or "defamation per

se" and stating he acted with malice. Even if Mr. Somal is allowed to testify on some damages

issues, despite his lack of data or mythology, he is not allowed to testify to legal conclusions.

### III.      LAW AND ARGUMENT

"Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and

informed by the seminal case applying Rule 702, *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262, 276 (6th Cir. 2014). Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he rules of evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. The trial court's "gatekeeping" task with respect to expert testimony applies not just to scientific evidence, as was at issue in *Daubert*, but to all types of specialized knowledge presented through an expert witness. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999). "[T]he relevant reliability concern may focus upon personal knowledge or experience . . . [as] there are many different kinds of experts, and many different kinds of expertise." *Id.* at 150. The Court must analyze separately the proposed expert's qualifications, reliability and helpfulness. Because non-exhaustive, multi-factor tests "run the risk of obscuring the core inquiry," courts must not lose their grip on the two "key handholds" of Rule 702—a reliable methodology, reliably applied. *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021).

The Sixth Circuit has noted that absolute certainty is not required of an expert but that sheer speculation, regardless of the qualifications of the speculator, lacks sufficient reliability:

> Rule 702, we recognize, does not require anything approaching absolute certainty. *See Daubert*, 509 U.S. at 590, 113 S. Ct. 2786. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010).

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 529-30 (6th Cir. 2008). Expert testimony based on scientifically valid principles will satisfy Rule 702; whereas, "an expert's subjective belief or unsupported speculation will not." *Smelser v. Norfolk S. Ry. Co.,* 105 F.3d 299, 303 (6th Cir.1997); *see also Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (noting that "[r]ed flags" in expert reports include "improper extrapolation"); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 680 (6th Cir. 2011) (affirming exclusion when expert could not explain methodology underlying calculations).

"As gatekeeper, the trial court only determines the admissibility of expert evidence; the jury determines its weight. The court's focus is 'solely on principles and methodology, not on the conclusions that they generate.'" *United States v. Stafford*, 721 F.3d 380, 393-94 (6th Cir. 2013) (quoting *Daubert,* 509 U.S. at 595) (alterations in original). The crux of the expert-witness analysis is "whether a putative expert's testimony would be inadmissible junk science

or instead would be testimony falling within the 'range where experts might reasonably differ.'" *Thomas v. Novartis Pharms. Corp.*, 443 F. App'x 58, 60 (6th Cir. 2011) (quoting *Kumho Tire*, 526 U.S. at 153, 119 S. Ct. 1167 (1999)).

The party offering the expert has the burden of proving admissibility of the expert's opinion by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10, 113 S. Ct. 2786. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530. Testimony based on allegedly erroneous facts will generally be permitted "when there is some support for those facts in the record." *Id.*

Additionally, the Sixth Circuit has explained that "although an expert's opinion may 'embrace an ultimate issue to be decided by the trier of fact,' Fed. R. Evid. 704(a), the issue embraced must be a factual one." *Berry*, 25 F.3d at 1353. An expert "may [not] opine on the ultimate issue of liability." *Id.* Consequently, and for good reason, the Sixth Circuit has concluded that "Rule 702 prohibits expert witnesses from testifying to legal conclusions." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). This is because such testimony "does little more than tell the jury what result to reach—[and] is properly excludable under the Rules." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997)

Under Rule 702, the watchword is "reliability." What has Mr. Somal presented that is reliable? He's a damages expert opining on economic damage for lost business, yet he did not look at the tax return for the year at issue, 2023. He did not look at any of the Requests for Payment Plaintiff submits to determine if any of the attorneys Plaintiff got work from before

11

Councilman Ash-Shafii's statement stopped using his services. And he did not even read Plaintiff's own testimony that no one has said they have stopped using him because of the statement and that "everybody knows that [Ash-Shafii's] lying and it was false and fake." It is *impossible* for Mr. Somal to reliably conclude that Plaintiff will have $283,500 in economic damages over the next three years by losing work from 8 to 10 attorney at 6 to 8 cases a piece. There is no evidence those attorneys even exist, let alone that a drop in their referrals would be related to the statement as opposed to simply not needing a private investigator. Mr. Somal's opinion is rank speculation.

The same is true of his opinion as to damage for "online rehabilitation." Mr. Somal can repeat "it's out there" all he wants, it doesn't make it true. Any reliable expert looking to assess the need for online rehabilitation would assess the spread of the alleged defamatory information online, otherwise how can he say it will take 18 months and $180,000 to rehabilitate. If the Court reads his testimony, it will see that analysis was not even part of Mr. Somal's scope of work, which is why the report includes no discussion of what search results returned what responses and where the statement can be found online. Mr. Somal's opinion on rehabilitation damages is not just unreliable, it is devoid of any methodology.

Mr. Somal also has no methodology for his $500,000 to $750,000 in reputational harm damages. In preparing his report, Mr. Somal did not speak to one person whose opinion of Plaintiff was harmed by Councilman Ash-Shafii's statement. Mr. Somal did not look at any Requests for Payment, which would show which attorneys were using Plaintiff's services

before and after the statement to see if there was a change. And Mr. Somal did not look at Plaintiff's 2023 tax return and compare it to plaintiff's financials for 2024 and 2022, which actually show that Menge's private investigator business has more gross profits now than before the statement. Mr. Somal did not even read Plaintiff's deposition transcript, which establishes that Plaintiff has no evidence of any harm from Councilman Ash-Shafii's statement. An "expert" does not get to ignore all of the evidence that does not suit his preferred opinion, but that is *exactly* what Mr. Somal did. His opinions are moored to nothing, and this Court should not allow them to be presented to the jury.

### IV.    REQUESTED RELIEF

For the foregoing reasons, Defendant, Khursheed Ash-Shafii, respectfully requests that this Honorable Court grant his Motion in Limine to Strike Expert Report and Preclude Testimony of Plaintiff's Expert Sameer Somal.

Respectfully submitted,

O'REILLY RANCILIO P.C.

By: /s/ Nathan D. Petrusak
Marc D. Kaszubski (P60333)
Nathan D. Petrusak (P75359)
Attorneys for Defendant
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000
mkaszubski@orlaw.com
npetrusak@orlaw.com
Dated: January 13, 2025                    sruark@orlaw.com

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

    Plaintiff,       Case No. 2:23-cv-11339
               Hon. David M. Lawson

v

KHURSHEED ASH-SHAFII

    Defendant.

| | |
|---|---|
| Robin H. Kyle (P33330) | O'REILLY RANCILIO P.C. |
| Attorney for Plaintiff | Marc D. Kaszubski (P60333) |
| 8120 E. Jefferson Avenue, Suite 3E | Nathan D. Petrusak (P75359) |
| Detroit, MI 48214 | Scott R. Ruark (P81336) |
| (313) 469-7322/(313)-492-2691 | Attorneys for Defendant |
| robinhkyle@comcast.net | 12900 Hall Road, Suite 350 |
| | Sterling Heights, MI 48313 |
| | (586) 726-1000/Fax: (586) 726-1560 |
| | mkaszubski@orlaw.com |
| | npetrusak@orlaw.com |
| | sruark@orlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2025, I electronically filed the foregoing Defendant's Motion in Limine to Strike Expert Report and Preclude Testimony of Plaintiff's Expert Sameer Somal and Brief in Support with the Court with the Clerk of the Court using the ECF System which will send notifications of such filing to all parties of record if they are registered users, or if they are not, by placing a true and correct copy in the United States Mail, postage prepaid, to their address of record.

14

Respectfully submitted,

O'REILLY RANCILIO P.C.

By: /s/ Nathan D. Petrusak
      Marc D. Kaszubski (P60333)
      Nathan D. Petrusak (P75359)
      Attorneys for Defendant
      12900 Hall Road, Suite 350
      Sterling Heights, MI 48313
      (586) 726-1000
      mkaszubski@orlaw.com
      npetrusak@orlaw.com
Dated: January 13, 2025      sruark@orlaw.com