# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

BRIAN MENGE

*Plaintiff*

—*vs*—

Case No. 2:23-cv-11339
Hon. David M. Lawson

KHURSHEED ASH-SHAFII

*Defendant*

## PLAINTIFF'S OPPOSITION RESPONSE TO DFENDANT'S MOTION IN LIMINE TO STRIKE EXPERT REPORT AND PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAMEER SOMAL

Now Comes the Plaintiff Brian Menge by and through his undersigned attorney Robin H. Kyle and pursuant to Fed. R. Evid. 702 and hereby opposes Defendant's Motion as follows:

1.  Answering paragraph ¶ 1 of Defendant's Motion Plaintiff admits same.

2.  Answering paragraph ¶2 of Defendant's Motion Plaintiff admits same.

3.  Answering paragraph ¶3 of Defendant's Motion Plaintiff admits same.

4.  Answering paragraph ¶4 of Defendant's Motion Plaintiff admits same.

5.  Answering paragraph ¶5 of Defendant's Motion Plaintiff denies same.

Further answering said paragraph Plaintiff's Expert Report and Testimony are admissible under Fed. R. Evid. 402 and 702 and also under *Daubert v. Dow*

Pharmaceuticals, Inc., 509 U.S. 579,(1993) and *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir 2008).

     **WHEREFORE** Plaintiff respectfully request this honorable Court enter an order denying Defendant's Motion.

January 21, 2025          By: *Robin Kyle*

                            Robin H. Kyle, P33330
                            Attorney for Plaintiff Brian Menge
                            8120 E. Jefferson Ave. Suite 3E
                            Detroit, Michigan 48214
                            Cell: 313-492-2691
                            robinhkyle@comcast.net

2

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

BRIAN MENGE

*Plaintiff*

—*vs*—

KHURSHEED ASH-SHAFII

*Defendant*

Case No. 2:23-cv-11339
Hon. David M. Lawson

## PLAINTIFF'S OPPOSITION BRIEF TO DFENDANT'S MOTION IN LIMINE TO STRIKE EXPERT REPORT AND PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT SAMEER SOMAL

# TABLE OF CONTENTS

**PAGE**

**ITEM**

INTRODUCTION ...................................................................................................1

CONTROLLING AUTHORITIES  ..................................................................... iii

STATEMENT OF QUESTIONS PRESENTED  .................................................. iii

INDEX OF AUTHORITIES  ........................................................................... iv - v

COUNTER STATEMENT OF MATERIAL FACTS  ........................................ 1 - 3

## ARGUMENT

BECAUSE THE EXPERT WITNESS TESTIMONY IS WHOLLY WITHIN THE BOUNDS OF FRE 702 AND THE APPLICABLE CASE LAW DEFENDANT'S MOTION TO STRIKE THE TESTIMONY SHOULD BE DENIED

POINT
I:          PLAINTIFF'S EXPERT REPORT AND TESTIMONY ARE
            ADMISSIBLE PURSUANT TO FEDERAL RULE OF
            EVIDENCE 702  .............................................................................3 - 8

POINT
II          PLAINTIFF'S EXPERT REPORT AND TESTIMONY ARE
            ADMISSIBLE UNDER THE SUPREME COURT'S DECISION
            IN DAUBERT  ...............................................................................8 - 12

POINT
III:        PLAINTIFF'S EXPERT REPORT AND TESTIMONY
            ARE ADMISSIBLE UNDER THE SUPREME COURT'S
            DECISIONIN *INNOVATION VENTURES* ...................................12 - 15

            A)    Somal's Extensive Training
                  As Evidenced in the CV.......................................................13 – 15

**TABLE OF CONTENTS (CONT'D)**

**PAGE**

**ITEM**

REQUESTED RELIEF .............................................................................................15

## CONTROLLING AUTHORITIES

Fed. R. Evid. 702

*Innovation Ventures, L.L.C V. Custom Nutrition Laboratories,*
520 F.Supp.3d 872 (2021)

## STATEMENT OF QUESTION PRESENTED

WHETHER DEFENDANT HAS DEMONSTRATED PLAINTIFF'S EXPERT
SOMAL SAMEER & HIS REPORT ARE UNRELIABLE UNDER FED. R.
EVID. 702 AND SHOULD THEREFORE BE STRIKEN?

Plaintiff Answers "NO"

Defendant Answers "YES"

# INDEX OF AUTHORITIES

**PAGE**

**CASES**

*Berry v City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) ........................................................................13

*Daubert v. Merrell Dow Pharmaceuticals*, Inc.,
    509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) .................. passim

*Gross v Comm'r*,
    272 F3rd 333, 339 (6th Cir. 2001).............................................................

*Innovation Ventures, L.L.C V. Custom Nutrition Laboratories*,
    520 F.Supp.3d 872 (2021) ....................................................................14

*Kumhoo, v. Carmichael*
    526 U.S. 137, 150 (1999) ......................................................................11

*Scrap Metal*,
    527 F.3d 517, 529 (6th Cir. 2008) .......................................................2, 6, 7

*Stecyk v. Bell Helicopter*,
    295 F. 3D 408, 415 N. 3 (3D CIR. 2002) ...........................................11

*United States v. Evans*
    892 F. Supp 949 2d. (N.D. Ill 2012) ..................................................11

*United States v. Melcher,*
    *672 F. App'x 547, 552 (6th Cir. 2016)* .............................................12

*U.S. v. Reynolds*
    626 Fed. Appx 610 (2015) ....................................................................10

**STATUTES**

26 U.S.C. §621 ...........................................................................................3

MCL §35.4012.................................................................................................3

## INDEX OF AUTHORITIES

**STATUTES**

MCL §600.2911................................................................................................4

**COURT RULES**

Fed. R. Evid. 702 ............................................................................. Passim

## INTRODUCTION

Plaintiff respectfully submits this *Brief in Opposition* in response to Defendant's *Motion to Strike Expert Testimony*.  As discussed more fully herein, Defendants motion misapprehends the first prong under Federal Rule of Evidence 702, which only requires an expert witness "be qualified by knowledge, skill, experience, training or education."

Defendant's analysis focuses not on issues surrounding the admissibility of the expert testimony but exclusively on "the conclusions" generated by the expert report with which Defendant disagrees. This is a rank misstatement of both the case law governing the rule and the rule itself.

## COUNTER STATEMENT OF MATERIAL FACTS

Prior to this action, Plaintiff sued Defendant in Civil Action No. 21-cv-10152 alleging violation of the Veterans Protection Act, MCL §35.4012, seeking enforcement of statutory rights under the ADEA 26 U.S.C. §621 and redress for a §1983 violation of his First Amendment right to testimony as a subpoenaed witness. Id.

On December 2, 2022, the parties agreed to a monetary settlement. Id., Plf Compl. ECF No. ¶20. Page ID 36-37.  Thereafter on April 3, 2023, Defendant Council members conducted a meeting of the Highland Park City Council pursuant to the Highland Park City Charter § 5-3.  Id.  The Council Meeting was broadcast live on television, radio, and the internet.  Id. At the meeting, Defendant Ash-Shafii

of the City Council publicly stated Plaintiff stole and misappropriated forfeiture funds from the Highland Park Police Department.  <u>Id.</u>[1]  The Mayor was present at the meeting and identified Plaintiff by name as the object of the slanderous statements.

The Mayor also confirmed at the meeting: "our former mayor made a statement that he has no evidence" to substantiate the statements that Plaintiff stole anything from the City of Highland Park drug forfeiture fund. The slander was false. <u>Id</u>.  Councilman Ash-Shafi also stated (broadcast on line) that, "we don't need to bring back somebody who sued the city and then took a half million dollars"—hence the retaliation First Amendment claim.  Complaint Plf Compl. ECF No. 4, Page <u>Id.</u>, 41.

Defendants are also accused of slander and defamation under state law, MCL §600.2911.  <u>Id.</u>, Page Id 45-46.  According to Expert Somal Sameer's report and the testimony, the slander is still published on the website of the City of Highland Park and other internet sites including Facebook. Dep Sameer, ECF No.104-5, Page <u>Id.</u>, 3489, 3587, 3597.

As indicated, there have been numerous and continuing publications of Plaintiff's having stolen drug money.  Defendant also published on his Facebook

---

[1]    Plaintiff's Complaint also alleges Defendants falsely stated that Plaintiff had been fired from his employment after receiving a multi-million dollar settlement from Defendant. <u>Id.</u>, Page <u>Id.</u>, 3537.

page, the defamatory lie that "Officer Minge (sic) was fired," from the HPPD. See

**Exhibit "2"**.

## ARGUMENT

**POINT I:**  **PLAINTIFF'S EXPERT REPORT AND TESTIMONY ARE ADMISSIBLE PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

Rule 702 governing "Testimony by Expert Witnesses" provides,

> A witness who is qualified as an expert by ***knowledge, skill, experience, training, or education*** may testify in the form of an opinion or [if] it is more likely than not that:
>
> (a) the expert's ***scientific, technical, or other specialized knowledge will help the trier*** of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.
>
> (Emphasis added)

Drawing on 702, counsel protests Somal's report lacks reliability, method-

ology— even as the report *details* Samol's mythology— and must be precluded

under *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 113 S. Ct.

2786, 125 L. Ed. 2d 469 (1993) and 702. Def Mot ECF No. 104, Page ID.2983.

Exception is also taken to Somal's status as a non-physic-ian/non-attorney.

Accordingly, his testimony as to any emotional distress should be precluded. Def Br

ECF No. 104, Page Id., 2991. Defendant even claims the report and testimony are

"non-existent." Id. Finally Defendant concludes Plaintiff's expert report and

testimony will not "assist" the jury. Id.

Somal's used his extensive training and experience dealing with financial

matters, and reviewed five years of corporate and individual tax returns, and

interviewed witness including the Plaintiff. [2] The mythology implemented by Somal

in this case is similar to the mythology approved by the Sixth Circuit in ' *Scrap

Metal, supra.* In *Scrap Metal* the defendant challenged plaintiff's expert as being

unreliable based upon his method of calculating damages. Id., p.529.

As in *Scrap Metal* (*supra*), Defendant's objection is premised upon reading

the threshold for reliability under *Daubert* that is much stricter than what the Sixth

Circuit requires. See *Innovation Ventures, L.L.C. v. Custom Nutrition Labs L.L.C.*,

520 F.Supp. 3d 872, 878, 895 (E.D. Mich. 2021).

Under the cases, expert testimony may be deemed reliable so long as the

witness's premises have a reliable foundation rather than being based on "unsup-

---

[2]     See, Somal CV and Deposition where he describes the mythology implemented, including interviewing witness, business associates of Plaintiff; and reviewing Tax Returns from 2018 – 2022.) See also, Samol Expert report CV & Appendix of Documents reviewed. **Exhibit "1"** and Dep Sameer, ECF NO. 104-5. Page Id., 3551-3553.

ported speculation." Id. For example, *Scrap Meta* considered whether an expert witness used an inaccurate database and therefore necessarily reached (erroneous conclusions." 527 F. 3d at 529. There a jury found a defendant liable awarding plaintiff damages of over $20 million. Id., at 523.

The issue on appeal in *Scrap Metal* was whether plaintiff's damages expert was reliable and whether the district court erred by admitting his testimony. The defendant argued that the expert witness used erroneous data and necessarily produced an erroneous conclusion. Id. The Sixth Circuit rejected this argument because "it fundamentally confuses the creditability and accuracy of [expert witness] opinions with reliability." Id. Instead, "a determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion (citing 702).

*Scrap Metal* ruled reliability requires the expert's testimony "be supported by appropriate validation—i.e., "good grounds" based upon what is known, citing *Daubert,* 509 U.S.at 590.  In a *Daubert* motion, district courts are merely required to access whether the expert testimony "rests upon a reliable foundation as opposed to, say, unsupported speculation." Id., at 529-30. See also See *Innovation Ventures, L.L.C., supra,* at 886.  The *Scrap* Court concluded that the district court did not err in admitting the expert testimony because defendant's contentions went to the weight of the evidence, not its admissibility. *Scrap* (*supra*), p. 529-30.

Defendant argues:

> These damages figures are pure, unadulterated
> speculation, which Mr. Somal would know are in
> accurate if had he reviewed any evidence in this
> case.

Def Br ECF No. 104, Page ID.2993.

But this is flatly contradicted by the record.  Somal never reviewed "any

evidence in this case"?  In fact, he surveyed 5 years of tax returns, interviewed

numerous witnesses, and reviewed deposition testimony, **Exhibit "1"** [3]  Defendant

argues had Somal *read* Plaintiff's deposition he would know: no one, except for Mr.

Whittie told Plaintiff they are not using his services because of Councilman Ash-

Shafii's statement. Def Br ECF No. 104, PageID.2993.   But this argument fails. As

Somal testified, clients are not going to call Menge and say I'm not using your

services.

> Again, based on my knowledge of how reputation
> works, Mr. Menge wouldn't be aware of attorneys
> that decide not to use him. They're not going to

---

[3]    Defendant's claim that Somal calculated his damages opinion "after not
reviewing any testimony or financial records" is a preposterous claim in light of the
Expert Report which contains an Appendix of Documents Reviewed by Somal. The
documents listed include tax returns, and the deposition testimony of attorney
Dennis Whittie.  Whittie's testimony is referenced in Defendant's Brief. ECF 104,
PAIGE ID 2992-93.

   In his report, Somal describes one of the interviews with a former police
officer who worked with Plaintiff and had heard the defamatory statements. **Exhibit
"1"** p. 23.  Somal even interviewed the current chief of police James McMahon who
confirmed the Defendant's statements were false and could not have occurred. Id.

> call him up and say, "Hey, Brian, we -- we're not
> going to use you 'cause of your horrible
> reputation.'"

  Dep. Somal, Pp. 66-67**. "Exhibit 1."**

Defendant criticizes Somal for not reviewing Dennis Whittie's deposition.

ECF No. 104, PageID.2993.  But this flies in the face of the record which identifies

Whittie's deposition is in the Appendix of Documents attached to Somal's Report.

**Exhibit "1"**.  The Report also reflects Somal not only reviewed Whittie's deposition

but actually interviewed Whittie**.  Exhibit "1"** pp. 23, 30, 40.  Continuing this

argument, Defendant insists:

> Mr. Somal would know that the number of cases
> that Mr. Whittie claims he did no it refer to
> Plaintiff because of the statement was 2, not 9 to
> 10.

> ECF No. 104, PageID.2993.

But this wasn't the testimony.  Whittie testified he had taken a break from

referring cases to Menge "because of the allegation" and limited using him on every

case "I could before the allegation."  When asked about the number of cases he did

not refer to Menge, Whittie said "I can recall **at least two,** but keep in mind, **you're**

**limiting it to those two weeks.** (Emphasis supplied, **Exhibit "2"** p. 56).  So, Whittie

did not say he only did not send two cases to Menge, he said it was "***at least*** two," in

"two weeks." Emphasis added, <u>id</u>.

**POINT II**      **PLAINTIFF'S EXPERT REPORT AND TESTIMONY ARE ADMISSIBLE UNDER THE SUPREME COURT'S DECISION IN DAUBERT**

Next Defendant criticizes Somal for not reviewing 100s of RFPs. Respectfully, all the relevant financial information from the RFPs is reflected in the 5 years of tax returns identified in Somal's Report. The only thing to be gained in terms of damages analysis, from reviewing hundreds of RFPs, (essentially invoices) is attorneys and dates of payments. This information may have relevance in other contexts, but is inconsequential in determining loss, profits or damages.

The only thing in the RFPs that is not reflected in the Plaintiff's Tax returns is the source of the gross revenue. Defendant is free to cross examine Somal at trial regarding his failure to review RFPs but this (as the Sixth Circuit holds) only goes to the weight of Somal's testimony, not its admissibility. *Innovation Ventures, L.L.C., supra, Scrap Metal, supra.*

Defendant's argument Somal used no methods or data is belied by the record. Tax Returns are data, and interviewing witnesses, reviewing jury verdicts, applying years of education and experience clearly qualifies as a reliable methodology. Defendant's *Daubert* analysis is focused on Somal's financial damages conclusions. However, when evaluating the reliability of expert testimony, the Court focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert v.* 509 U.S. at 595, 113 S.Ct. 2786.

In *U.S. v. Reynolds* 626 Fed. Appx 610, 614 (2015), the court was faced with a *Daubert* challenge to expert testimony regarding cell phone technology. The Court noted a conflict in the federal courts on the issue. The court cited *United States v. Evans* 892 F. Supp 949 2d. (N.D. Ill 2012) where the Court excluded FBI expert cell-site testimony because it was "unreliable," under *Daubert*. Id., p. 955-57. Comparing the holding in *Evans* with holding from other federal courts, the Court noted several courts have reached the opposite conclusion of *Evans* regarding the reliability of an agent's methodology. Id., citing *United State v. Machado-Erazo*, 950 F. Supp 2d, 49, 57 (2013).

In the Sixth Circuit the test of reliability is "flexible," and the *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of a particular case.  See *Kumhoo, v. Carmichael* 526 U.S. 137,  150 (1999) as superseded by FRE 702 (Dec 1, 2000). (citing *Daubert,* 509 U.S. at 593.

Even the Supreme Court has recognized that the *Daubert* factors "are not dispositive in every" and should be applied only "where they are reasonable measures of the reliability of expert testimony." *Gross v Comm'r*, 272 F3rd 333, 339 (6th Cir. 2001). See also *Scrap Metal, (supra),* which held:

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. See also *Stecyk V. Bell Helicopte*r, 295 F. 3D 408, 415 N. 3 (3D CIR. 2002).

ID. 209.

*Scrap Metal* also acknowledged:

> But "rejection of expert testimony is the exception, rather than the rule, id., and we will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record.

> Id. 530.

Defendant also challenges Somal for making legal conclusions part of his testimony and report (Def Br ECF No. 104, Page ID.3001) citing *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016), Id. But *Melcher* upheld the admissibility of the FBR expert testimony even though the agent used terms like: "agent" and "bookmaker" (arguably legal terms and conclusions).

Rejecting the challenge to admissibility, the court ruled: "An expert offers a legal conclusion when he defines the governing legal standards or applies the standard to the facts of the case." Id., p. 552. *Melcher* explains the difference:

> Here, Davis [the expert] did neither. He did not attempt to define statutory terms like "illegal gambling business." Nor did he apply the statutory standard by, for example, opining that Melcher had "conducted" the business. Instead, he testified to what "bookmakers" and "agents" typically do, discussed Mackey and Melcher's conduct, and labeled them as a "bookmaker" and an "agent" respectfully."

> Id.

In rejecting the *Daubert* challenge to the use of "bookmaker" and "agent"

because they can be legal terms of art, the Court simply said, "that is not the law."

Id. The Court explained, "[I]f a term is not part of governing legal standard, then an

expert does not apply the law by using the term" explicitly adding it is permissible

for an expert to use words that are common in legal parlance, words like "conver-

sion," "embezzlement," and "forged." Id.

But *Melcher* went even further concluding, an expert could "suggest the

answer[s] to legal question" and "give the jury all the information it needs to come

to legal conclusions of its own."   *Melcher,* id., citing *Berry v City of Detroit*, 25

F.3d 1342, 1353 (6th Cir. 1994).  Defendant attempts to accomplish through his

motion—exactly what the Sixth Circuit held was "*not* the law," in *Melcher*.[4]

Defendant's criticisms regarding what Somal's report opines on the issue of

"online rehabilitation" are likewise mere fodder for cross-examination, *not* legal

hurdles to the admission of the report or the testimony. Def Br ECF No. 104, Page

ID. 3002. *Cf., Melcher. Berry,* (*supra*).  Defendant's Motion is without merit and

should be denied.

---

[4]     In making his argument Defendant continuously misrepresents the facts. Another
example of this is contained in Defendant's argument at Def Br No. 104, Page ID.3002. There
Defendant makes the erroneous claims: "And he did not even read Plaintiff's own testimony that
no one has said they have stopped using him because of the statement . . ." Id.
        Even if the statement were factually accurate and it is not, as Somal explained, attorneys
who stop using your services usually don't call you up to tell you, we are not using you "cause of
your horrible reputation." Dep. Somal, ECF No. 104-5, Page ID 3538-39.

**POINT**        **PLAINTIFF'S EXPERT REPORT AND TESTIMONY ARE**
**III:**         **ADMISSIBLE UNDER THE SUPREME COURT'S DECISION**
                 **IN *INNOVATION VENTURES***

*Innovation Ventures, L.L.C V. Custom Nutrition Laboratories,* 520 F.Supp.3d

872 (2021) is instructive on the use of expert testimony on damages and lost profits.

The Sixth Circuit held plaintiff "may introduce testimony that uses market share to

quantify its lost profits." *Innovation Ventures, supra,* 345.  On the other hand, the

Sixth Circuit allows: then the "Defendant may then submit rebuttal evidence con-

cerning the weakness of this specific calculation." Id.

In *Innovation Ventures* defendant moved to exclude the lost profits testimony

for disqualification for failing to perform certain underlying market analysis and

failed to consider certain evidence.  The basis of the *Innovation Ventures* motions

are similar to the Defendant's challenges herein and are typical arguments in

*Daubert*. Cf., Def Br ECF No. 104, passim.

The Sixth Circuit rejected these arguments in *Innovation Ventures* and this

Court should reject them here.

In *Innovation Venture,* the defendant challenged the expert as being not

qualified because his report was "mere athematic" and because he assumes

Plaintiff's market share "without performing any of the necessary analysis to support

the conclusions." The court rejected the challenge noting defendant misunderstood

the first prong of the test under 702, id.

- 12 -

Finding the expert qualified, the court noted the expert was a licensed CPA who had also founded a firm engaged in "economic damages analysis and financial consulting." Comparing the credentials in *Innovation Ventures* with Somal's, the analysis under 702 and *Daubert* is easy. See **Exhibit "1"**, CV.

### A)   Somal's Extensive Training Evidenced in the CV

Somal's comprehensive training, education and experience include:

- Co-Founder & CEO of Blue Ocean Global Technology;
- Financial Advisor & Technology Intermediary at Merrill Lynch & Co., Inc.
- Co-Founder & CEO of Blue Ocean Global Wealth.
- retained as an expert in financial litigation matters over 200 times.
- Chartered Financial Analyst;
- Certified Financial Planner; and a Chartered Alternative
- Investment Analyst
<u>Id</u>.

In addition to his extensive testifying experience, Somal is a published author and Internet Subject Matter Expert Witness. He authored a White Paper on Defamation (<u>id</u>.) and lectured at CLE courses respecting Online Reputation management. <u>Id</u>. Somal's credentials are detailed further in an attachment to his CV, Appendix A. <u>Id</u>., Appendix A is 132 pages long detailing innumerable lectures delivered to various originations, including: the Federal Home Loan Bank in Cincinnati Ohio; the Legal Week in New York, NY; the Legal Marketing Association in Orlando,

Florida; the Consumer Protection Financial Protection Bureau in Washing D.C., and many others. Id.

The relevance of this expert testimony on the issue of damages from cyber defamation is indisputable. Somal's report and testimony are therefore relevant and helpful to the trier of fact. *Innovation Venture,* (*supra*).  This Court should admit Somal's report and testimony.

### RELIEF

Wherefore Plaintiff respectfully requests this honorable Court will enter an Order denying Defendant's Motion.

January 27, 2025                             By:_____
                                                      Robin H. Kyle, P33330
                                                      *Attorney For Plaintiff Brian Menge*
                                                      8120 E. Jefferson Ave. Suite 3E
                                                      Detroit, Michigan 48214
                                                      Phone: 313-492-2691
                                                      robinhkyle@comcast.net

,