UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

                Plaintiff,                         Case Number 23-11339

v.                                          Honorable David M. Lawson

KHURSHEED ASH-SHAFII,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Brian Menge, a former police detective with the City of Highland Park, Michigan, sued the City in 2021 after he was demoted from his position in the detective bureau. He recovered a substantial settlement, and after a time he sought his job back. Defendant Khursheed Ash-Shafii, a Highland Park city councilman, strongly opposed the rehire and made statements at a council meeting accusing Menge of theft in the line of duty. Menge alleges in an amended complaint that Ash-Shafii's statements were defamatory and were made in retaliation for Menge's successful lawsuit against the City. Now that discovery has closed, Ash-Shafii moves for summary judgment on Menge's claims for violation of his First Amendment rights and for defamation. Factual issues preclude summary judgment on the First Amendment retaliation claim, but Michigan law affords Ash-Shafii legislative immunity and a legislative privilege that precludes Menge's state-law defamation claim. Menge also alleged a due process violation claim in his amended complaint, but he has abandoned that cause of action. The Court will grant the motion for summary judgment in part and dismiss all but the First Amendment retaliation claim, which will proceed to trial.

I.

Menge joined the Highland Park police department's patrol division in 2014 and eventually rose to the rank of detective.  In 2021, he sued the City based on allegations that he was demoted by the former mayor after testifying in a lawsuit brought by another police officer who said he suffered adverse consequences after he had arrested the mayor's son.  In Menge's 2021 suit, he alleged that the City retaliated against him in violation of his rights under the First Amendment and discriminated against him based on his age and status as a veteran.  The case was assigned to another judge in this district and ultimately was resolved by the parties' settlement agreement where Menge received a $560,000 payment.

While that case was pending, Menge resigned from the City's police department and joined the police force for the City of Ecorse, Michigan.  He also began to offer private investigator services.  That work typically came from referrals by local members of the defense bar or assignments from the Michigan Indigent Defense Commission.  Menge's compensation for each case typically would be capped at $1,000.  In 2023, his gross income from his investigative work totaled nearly $200,000.

Despite his growing private investigator business, Menge remained interested in returning to the Highland Park police department.  As part of his attempt to rehire with the force, he appeared before the City's Police and Fire Commission on March 22, 2023 to answer questions from community members.  The meeting was live-streamed on Facebook.

Highland Park City Councilmember Khursheed Ash-Shafii took umbrage at the prospect of Menge returning to the force.  He shared a link to the Police and Fire Commission meeting on his Facebook page with a caption stating that there was "no way in hell" the City should bring

Menge back because he had been "fired" previously and had sued the City.  Facebook Post, ECF

No. 112-7, PageID.3830.

Ash-Shafii weighed in again at the City Council's April 3, 2023 meeting, during the

"Council Affairs" portion of agenda:

> I'm concerned about the direction in which we are going with our police
> department.  At the moment we've got great officers here.  Every officer in here I
> can account for, but to bring back an officer who not only sued the city, got a half
> a million dollar settlement, but now he wants to come back and work for us — I
> find that unacceptable.  *Ok, especially an officer, and I don't have to say his name,
> you know who he is, especially an officer who was caught stealing forfeiture funds.*
> He should not be brought back as a police officer in the City of Highland Park. He
> should not be brought back.  And if you watch, if you watch, the Police and Fire
> Commission meeting about a week and a half ago, you'll know the officer I'm
> talking about.  He should not be brought back here as a police officer.  He was no
> good then, and he's no good now.  And I stand against bringing that officer back
> here.  He does not need to come back here.  Tell him to find a job somewhere else.
> He got his money, move on.  We're good.

City Council Meeting Recording, 0:00-1:05 (emphasis added).

Although Ash-Shafii did not name Menge, Mayor Glenda McDonald spoke up to state that

his comments referred to Menge.  She asked Ash-Shafii to provide evidence supporting his

allegation that Menge had stolen from the forfeiture fund and stated the City's former mayor had

told her that "he had no evidence."  *Id.* at 1:15-1:40, 2:12-2:18.  Ash-Shafii responded that he had

been provided evidence by "the former administration" and would email it to the Council.  *Id.* at

1:22-1:23, 2:20-2:21.

During his deposition in this case, Ash-Shafii stated that a former human resources

employee sent him an article naming Menge in connection with an illegal car towing operation in

the City, but he never was able to produce any materials directly supporting his claim that Menge

had stolen from the forfeiture fund.  Ash-Shafii dep., ECF No. 103-8, PageID.2629-30, 2638.  The

parties did locate one article about the car towing allegations, which were the subject of a civil

lawsuit in this district, but the article does not name Menge and he is not named in filings in the

associated civil complaint.  *See* ECF No. 103-9, PageID.2717-20; *Nationwide Recovery, Inc. v. City of Detroit*, No. 17-12378 (E.D. Mich.).  The only article made part of the record that does name Menge is a story in the City News titled "Highland Park Loves Crooked Cops?"  ECF No. 103-10.  That article, however, merely accuses Menge of "racism" and states that he "was fired from Erie Township after the personnel committee accused him of conduct unbecoming of an officer and failing to show up in court."  *Id.* at PageID.2724.

The parties dispute whether Ash-Shafii's statements materially affected Menge and his business.  Ash-Shafii points out that the recording of the council meeting published to Facebook only has been viewed approximately 300 times, but Menge contends that his reputation still has suffered and that his private investigator caseload is down "considerably" because of Ash-Shafii's comments.  Menge dep., ECF No. 103-6, PageID.2447-48.  Dennis Whittie, a local defense attorney who regularly used Menge's services, testified that he was concerned after hearing the allegations against Menge, so he submitted Freedom of Information Act requests to the City.  *See* Dennis Whittie dep., ECF No. 103-21, PageID.2877-78.  While he waited on the FOIA results — which ultimately turned up no documents supporting the allegations — Whittie directed two matters to investigators besides Menge, suggested that another attorney "hold off on using him," and discussed the allegations with other members of the defense bar.  *Id.* at PageID.2874, 2924, 2928.

Menge filed this lawsuit in June of 2023, naming as defendants the City, its former mayor, and all of its council members.  In his complaint, which was amended later, he cited 42 U.S.C. § 1983 and alleged that the defendants unlawfully retaliated against him for exercising his First Amendment rights and also abridged his rights under the Due Process Clause (Count I), and that the defendants defamed him in violation of state law (Count II).  The case originally was assigned

to Judge George Caram Steeh of this district, who granted a motion for judgment on the pleadings brought by all defendants except Ash-Shafii.  ECF No. 80.  After the matter subsequently was reassigned to the undersigned, Ash-Shafii filed a motion for summary judgment.

The pleadings and the briefing do not delineate clearly the claims that were made and those that remain in dispute.  Count I is labeled "Violation of 42 U.S.C. § 1983," but that statute does not create any substantive rights; it merely provides a vehicle to vindicate other rights established by the Constitution and laws of the United States.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  In the body of that count, the plaintiff mentions the First Amendment and the "liberty rights protected by the Due Process clause."  Am. Compl. ¶ 69.  Count II of the amended complaint is labeled "Slander and Defamation."  In his opinion on the defendants' motion for judgment on the pleadings, Judge Steeh read the complaint to assert three claims: defamation, First Amendment retaliation, and a violation of the Due Process Clause.  However, Judge Steeh held that Menge had abandoned the Due Process claim.  ECF No. 80, PageID.1470.  Ash-Shafii did not join in the motion to dismiss.

Ash-Shafii's present motion for summary judgment asks for judgment on all of Menge's claims, although he does not address the Due Process theory explicitly.  Menge does not defend the theory of liability based on the Due Process Clause, and, like Judge Steeh, I conclude that this claim is abandoned, as the plaintiff acknowledged at oral argument.  *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").  I will address the merits of the First Amendment retaliation claim and the defamation claim challenged by the defendant.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute.  *Alexander*, 576 F.3d at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

A.

Defendant Ash-Shafii argues that he is entitled to qualified immunity on Menge's First Amendment retaliation claim because the facts in this record do not clearly establish all the elements of that claim.  This claim was brought under 42 U.S.C. § 1983, which provides a vehicle for individuals to seek redress in court for violations of rights secured by the Constitution and laws of the United States.  To state a claim under that section, "a plaintiff must set forth facts that, when

construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  And because the defendant has raised the defense of qualified immunity, Menge also must show that the constitutional right allegedly violated was clearly established at the time. *Jackson v. City of Cleveland*, 64 F.4th 736, 745 (6th Cir. 2023) (stating that a government actor is entitled to qualified immunity from suit at the summary judgment stage of the case if the evidence in the record shows that the official's conduct did not violate "clearly established . . . constitutional rights of which a reasonable person would have known") (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Menge cites two provisions of the Constitution in Count I of his amended complaint: the First Amendment and the Due Process Clause of the Fourteenth Amendment.  However, Menge's response to the summary judgment motion does not defend the theory of liability based on the Due Process Clause, and he acknowledged at oral argument that he has abandoned it.  *Brown*, 545 F. App'x at 372 ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").  The sole remaining federal claim is based on the theory of retaliation for engaging in protected conduct under the First Amendment.

To prevail on a such a claim, a plaintiff must show that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and "(3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Evans–*

*Marshall v. Board of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010).  Ash-Shafii maintains that the record does not support either of the first two elements.

1.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.  Ash-Shafii characterizes the protected conduct alleged by the plaintiff as falling under the Speech Clause of the First Amendment, contending that Menge's 2021 lawsuit was not protected speech because it merely concerned his personal employment circumstances and not a matter of public concern voiced by a government employee in the capacity of a private citizen.  He argues that Menge's claim does not survive the balancing of public employee speech rights against the government's interests required by *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

Menge's protected conduct consisted of filing a lawsuit against the City, which falls within the Petition Clause, not the Speech Clause.  *See Sure–Tan, Inc. v. Nat'l Lab. Relations Bd.*, 467 U.S. 883, 896-97 (1984) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.").  Nevertheless, *Pickering* balancing still is required, because "[t]he considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 389 (2011).

That balancing is a product of the Supreme Court's declaration years ago that public employees' First Amendment rights are more restricted than those of regular citizens because "government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983); *Pickering*, 391 U.S. at 568.  To show that

- 8 -

the speech was protected, a public employee must demonstrate three elements: the comments must address "matters of public concern"; the employee must speak as a private citizen, that is, not as an employee engaged in his official duties; and the employee's speech interests must outweigh that of his public employer "in promoting the efficiency of the public services it performs through its employees." *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337-38 (6th Cir. 2010) (quoting *Pickering*, 391 U.S. at 568).

Ash-Shafii maintains that Menge's 2021 lawsuit, which allegedly prompted the retaliatory statements, amounted to an internal personnel dispute and not a matter of public concern because Menge merely contested his demotion from detective to patrol officer and did not raise issues of systemic corruption or wrongdoing.   Menge responds that the substance of his 2021 lawsuit involved allegations that he was punished for testifying truthfully as a witness in another officer's lawsuit, an illegal practice under Michigan and federal employment law.  He adds that he no longer was a Highland Park employee that at the time of Ash-Shafii's alleged retaliation, so there is no government interest in regulating or punishing his speech.

Menge's second argument raises an interesting point: he was *not* a public employee in April 2023, when Ash-Shafii accused him of stealing from the forfeiture fund, so the "content and context" of the statement favors Menge.  *See Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010).   Among the relevant factors are "the speech's impetus; its setting; its audience; and its general subject matter."  *Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017).  These factors point ineluctably to the conclusion that Menge's statements — his "petition" — was made in his capacity as a private citizen, not a public employee.  *See Lane v. Franks*, 573 U.S. 228, 240 (2014) ("The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.").

The gravamen of Menge's earlier lawsuit was that he was demoted because of his testimonial support of another police officer who alleged in his own legal action that he was disciplined for arresting the former mayor's son, a subject that easily falls within the ambit of public corruption.

"Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004). However, the court of appeals has cautioned that "internal personnel disputes" generally are not matters of public concern, lest the First Amendment be transformed into a means of vindicating general employment issues. *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 761 (6th Cir. 2022) (citing *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) and *Connick*, 461 U.S. at 149).

Ash-Shafii's insistence that Menge's lawsuit represented his attempt to resolve a personnel dispute is relevant. But the court of appeals has explained that "even if speech addresses an internal personnel dispute, it may involve a matter of public concern if the dispute arose from 'actual or potential wrongdoing or any breach of the public trust.'" *Myers*, 41 F.4th at 761 (quoting *Brandenburg*, 253 F.3d at 898. "Quintessential examples" of matters of public concern include "allegations of public corruption, mismanagement, or misconduct in government." *Kirkland v. City of Maryville, Tennessee*, 54 F.4th 901, 908 (6th Cir. 2022). Therefore, "disputes arising from wrongdoing or breaches of trust implicate broader interests in good governance and democratic control" and are matters of public concern. *Myers*, 41 F.4th at 761.

Whether Menge filed his 2021 lawsuit to vindicate a purely personal interest is not determinative; the inquiry focuses on the *content* of the speech and not the motivations of its speaker. *Mayhew*, 856 F.3d at 467. And the content of Menge's lawsuit is a paradigmatic example of speech raising issues of government misconduct that is a matter of public concern. The thrust

of his allegations in the complaint was that officials demoted him because he gave truthful testimony supporting a co-worker's separate lawsuit, constituting retaliation in violation of his First Amendment rights.  *See* Am. Compl., *Menge v. City Highland Park*, No. 21-10152 (E.D. Mich.).

Ash-Shafii says that *Baird v. Hamilton County Department of Job and Family Services*, 809 F. App'x 308, 311 (6th Cir. 2020), stands for the proposition that providing testimony in a sworn judicial proceeding is not a matter of public concern.  But that case involved a grandmother's testimony at a hearing to secure custody of her granddaughter — indisputably a matter of personal interest.  *Baird*, 809 F. App'x at 311.  And the relevant speech in Menge's case was the lawsuit, not the testimony it arose out of, which, remarkably, involved a lawsuit brought by a fellow officer who himself alleged that he was wrongfully terminated for arresting the former mayor's son, clearly a matter of public concern in itself.  Regardless, the content of Menge's lawsuit was broader than the testimony issue on which Ash-Shafii focuses: Menge also contended that the Department failed to afford him certain rights as a veteran under Michigan law and discriminated against him based on his age.  Allegations of "discrimination and political retribution" are matters of public concern.  *Kirkland*, 54 F.4th at 908.

In his reply brief, Ash-Shafii pivots yet again and contends that his comments about Menge were not in retaliation for the substance of Menge's allegations in his lawsuit but because he secured a favorable settlement that cost the City a substantial sum.  ECF No. 114, PageID.3850-51.  That is true; Ash-Shafii's statements against Menge appear at least partly to have been motivated by Menge's *settlement* of the lawsuit, which occurred after he had already resigned from the police department.  *See* City Council Recording, 0:09-0:18 ("[T]o bring back an officer who not only sued the city, got a half a million dollar settlement, but now he wants to come back and

work for us — I find that unacceptable."); Oct. 12, 2022, Settlement Agreement, ECF No. 103-7. But the corresponding argument is perplexing. It is not clear how Ash-Shafii can distinguish between filing a lawsuit and settling a lawsuit for First Amendment purposes. His attempt to run away from the specifics of Menge's lawsuit actually works against him because filing a lawsuit itself is protected First Amendment activity under the Petition Clause. *Borough of Duryea*, 564 U.S. at 387. And his contention is belied by his deposition testimony that a reasonable jury easily could view as evidence establishing his motive to retaliate based on Menge's lawsuit itself. *See* Ash-Shafii dep., ECF No. 103-8, PageID.2686 ("I found that you're going to bring back an employee who sued the City, I think it's a bad idea, I think it's bad policy and I think it's opening up the door to more problems later on down the line.").

The record contains sufficient evidence to establish that the plaintiff engaged in conduct protected by the First Amendment.

## 2.

Ash-Shafii also argues that his statements do not constitute adverse action against Menge. "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. Menge alleges that the adverse action in this case is the set of public statements by Ash-Shafii falsely accusing Menge of criminal conduct in the line of duty involving the theft of money from the City's forfeiture fund. Ash-Shafii contends that the facts here, at most, set out a defamation claim but are not the sort of "rare and extreme" circumstances that would constitute "adverse action" necessary to maintain a First Amendment retaliation claim. ECF No. 103, PageID.2218-19. "However, this Circuit has held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation." *Fritz v.*

*Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (citing *Thaddeus–X*, 175 F.3d at 396). "Defamatory statements motivated in part by a person's exercise of their First Amendment rights can be, but are not always, legally sufficient standing alone for a claim of adverse action." *Id.* at 726. The question presented here is whether Ash-Shafii's false statements were sufficiently severe as to constitute adverse action.

The *Fritz* court surveyed cases that evaluated the level of harm resulting from defamatory or embarrassing statements that might be required to chill the conduct of a person of "ordinary firmness," mindful that "public employees . . . might have to endure more than the average citizen." *Id.* at 724. On the actionable side, the court considered *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), which, while not explicitly a defamation case, involved a "sheriff who used a press conference to publicize confidential and embarrassing details of the plaintiff's rape by an unknown assailant in retaliation for the victim's public criticism of the sheriff." *Fritz*, 592 F.3d at 727. The revelation of sensitive information about the plaintiff was sufficiently severe to amount to an adverse action. As a contrasting example, the court considered *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005). In that case, a defense attorney sued a prosecutor who filed motions accusing him of unethical conduct and issued statements to the media accusing him of ineffective assistance and merely looking for a show trial during the representation of his client. *Mezibov*, 411 F.3d at 715-16. Assuming that the statements amounted to defamation, the court held that any harm they caused was too minimal to create a cognizable constitutional claim, as he had alleged only a "generalized harm to his character and reputation." *Id.* at 722.

The *Fritz* court found that the facts before it occupied something of a middle ground. That case involved a plaintiff who ran an insurance sales business out of her home and became a fixture at a Township's public meetings, where she petitioned the board about various issues in the town.

- 13 -

Town officials soon became irritated with her presence, and one of the town's supervisors took it upon herself to call her employer on three occasions and complain about her advocacy at the public meetings.   The plaintiff ultimately was terminated from her job.   She then brought suit, alleging that the Township and the supervisor violated her First Amendment rights.   The court of appeals held that if the supervisor in fact "made statements that were designed to communicate to [the plaintiff's employer] that it would be in the business' interest . . . to rein in Plaintiff's exercise of her First Amendment rights . . . that would be an adverse action sufficient to support a claim of retaliation." *Fritz*, 592 F.3d at 725.   The court also pointed to *McBride v. Village of Michiana*, 100 F.3d 457 (6th Cir. 1996), where it had held that clearly established law put village officials on notice that their conduct, which included instances of "intimidation, harassment, and retribution," violated a reporter's First Amendment rights.   100 F.3d at 462.   The plaintiff also contended that some of the supervisor's statements were defamatory.   The Sixth Circuit acknowledged past caselaw holding that defamatory statements by a public official about a private citizen could amount to an adverse action for purposes of a retaliation claim but concluded that the statements alleged by the plaintiff to be defamatory "were not of such a character that they amounted to an adverse action taken on their own."   *Id.* at 727.   The court opined that although some of the officials' statements were potentially defamatory, they were not actionable because "they were not highly embarrassing nor did they impugn [her] character."   *Ibid.*   Even so, the court permitted her claim to proceed on a theory that the officials' conversations with her employer "were designed to threaten her economic livelihood."   *Id.* at 728.

Ash-Shafii maintains that "[t]he threshold for maintaining a retaliation claim where the *only* adverse action is alleged defamation is exceedingly high, and only rarely met."   ECF No. 103, PageID.2220.   This argument overstates the point.   As this Court explained in *Ball v. City of*

- 14 -

*Detroit*, although "the court of appeals has recognized in some cases that injury based on embarrassment, humiliation and emotional distress is sufficient to be actionable under § 1983, it has done so only in rare instances where defendants reveal false, irrelevant, or extremely intimate and humiliating details about a plaintiff."  2022 WL 17994012, at *13 (E.D. Mich. Dec. 29, 2022) (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521-23 (6th Cir. 1999); *Bloch*, 156 F.3d at 679-80; and *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012)).  False statements are precisely what Menge alleges occurred here.  Most notably, during the council meeting, defendant Ash-Shafii accused Menge of theft from the City's forfeiture fund and never had provided evidence to back up that claim.  The accusation was not merely a suggestion that Menge violated low-level City ordinances, like those considered in *Fritz*, but was an allegation that he had stolen funds from the public coffers — literally felonious conduct by a police officer.  The gravity of this charge is reflected in the fact that Michigan treats allegations of theft as defamation *per se* — that is, without proof of actual or special damages.  *See Jones v. Sears, Roebuck & Co.*, 459 F.2d 584, 587 (6th Cir. 1972); *cf. Lakin v. Rund*, 318 Mich. App. 127, 138-39, 896 N.W.2d 76, 81-82 (2016) (stating that "words charging an individual with a crime only constitute defamation per se if the crime involves moral turpitude or would subject the person to an infamous punishment" and noting that "moral turpitude" refers to violations of "societal mores, ethics, and honesty.").

Ash-Shafii contends that any adverse action here is so *de minimis* that it fails to state a retaliation claim as a matter of law and that Menge's filing of the present lawsuit proves that his speech was not chilled.  There are several problems with that theory.  For one, although the Sixth Circuit said as much in *Wurzelbacher*, the court there found it critical that that plaintiff "did not suffer a threat to his economic livelihood, *was not defamed*, did not endure a search or seizure of property, and did not experience the public disclosure of intimate or embarrassing information."

*Wurzelbacher*, 675 F.3d at 584 (citations omitted and emphasis added).  Here, Menge's allegations are grounded in his claim that he *was* defamed by Ash-Shafii in retaliation for his lawsuit. Additionally, he has introduced at least some evidence that his private investigation business suffered due to the defamation, so it is not fair to compare this to a case based merely on "embarrassment, humiliation and emotional distress." *Mattox*, 183 F.3d at 521.  And it simply cannot be the case that a plaintiff's willingness to file a lawsuit alleging retaliation constitutes persuasive evidence that they have not suffered an adverse action.  If that Catch-22 theory were true, no First Amendment retaliation lawsuit could survive.  A jury must be permitted to decide whether Ash-Shafii's statements constituted an adverse act.

3.

Ash-Shafii asserts that he is entitled to qualified immunity because it was not clearly established that his statement violated Menge's constitutional rights.  However, at the time Ash-Shafii spoke, it was clearly established that public employees may exercise their First Amendment rights to speak out on matters of public concern, *Connick*, 461 U.S. at 147, that "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government," *Sure–Tan, Inc.*, 467 U.S. at, 896-97, and that public employees had a right to petition for redress of grievances in matters involving public employment, *Borough of Duryea*, 564 U.S. at 389.  It was clearly established that the filing of a lawsuit raising issues of government malfeasance and discrimination is a matter of public concern.  *Kirkland*, 54 F.4th at 908.  It was clearly established that a government official may not retaliate against an employee based on his protected speech.  *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).  And it was clearly established that defamatory statements, particularly those significant enough to affect a material worsening of a plaintiff's livelihood, constitute impermissible retaliatory conduct.  *Fritz*, 592 F.3d at 724-26.

It is true that Menge's first lawsuit focused on events that occurred while he was employed by the City, but the Sixth Circuit has held that the "right to speak publicly and participate in a lawsuit addressing workplace discrimination and public corruption in the City's government was clearly established." *Whitney v. City of Milan*, 677 F.3d 292, 299 (6th Cir. 2012).

A reasonable official also would have been on notice that the character of Ash-Shafii's statements amounted to retaliation for Menge's exercise of his First Amendment rights. At the time of the council meeting where Ash-Shafii made his statements, it was clearly established in the Sixth Circuit that a government official could not threaten an individual's employment or employment prospects in retaliation for their exercise of their First Amendment rights. *See Fritz*, 592 F.3d at 725-26.

The Sixth Circuit continues to affirm the principle that "campaigns of harassment, when considered as a whole, may amount to adverse actions." *Josephson v. Ganzel*, 115 F.4th 771, 789 (6th Cir. 2024). And the court recently has reaffirmed *Fritz*'s conclusion "that legitimate threats 'to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse action — termination, refusal to hire, etc. — even if perpetrated by a third party who is not the employer.'" *Ibid.* (quoting *Fritz*, 592 F.3d at 728).

Ash-Shafii effectively accused Menge of conduct amounting to a serious crime — a matter that directly would affect his employability in a position of public trust like a police officer or as a private investigator. A reasonable official would have known that such conduct violated Menge's constitutional right to be free from retaliation for exercising core First Amendment rights. The defendant suggests that Menge suffered no damages because he never followed though on an application to be rehired by the Highland Park police department. But that ignores the inference

that Ash-Shafii's false accusations of police misconduct may have chilled Menge's pursuit of reemployment.

Menge's rights under the first amendment in the context of this case were clearly established at the time the Ash-Shafii's challenged conduct.  Ash-Shafii is not entitled to qualified immunity on this claim.

B.

Ash-Shafii contends that he is entitled to absolute legislative immunity from liability on Menge's defamation claim and that his statements during the council meeting were absolutely privileged.  He does not argue that the federal version of the legislative immunity doctrine bars the plaintiff's First Amendment retaliation claim.

Michigan law confers immunity from individual tort liability upon judges, legislators, and the "highest appointive executive official of all levels of government" provided that "he or she is acting within the scope of his or her judicial, legislative, or executive authority."  Mich. Comp. Laws § 691.1407(5).  Individual city council members are "legislators" within the scope of the statute's protections.  *See Blue Water Cannabis Co., LLC v. City of Westland*, No. 359144, 2023 WL 2941569, at *24 (Mich. Ct. App. Apr. 13, 2023), *judgment vacated in part on other grounds,* 12 N.W.3d 609 (Mich. 2024); *Hutchinson v. Twp. of Portage*, No. 240136, 2003 WL 21958278, at *3 (Mich. Ct. App. Aug. 14, 2003) (per curiam).  Michigan courts consider a number of factors to determine whether an official acted within the scope of their authority, "including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government"; however, an official's "motive" is not a relevant consideration.  *Am. Transmissions, Inc. v. Att'y Gen.*, 454 Mich. 135, 141-43, 560

N.W.2d 50, 52-53 (1997) (quoting *Marrocco v. Randlett*, 431 Mich. 700, 707-08, 433 N.W.2d 68, 71 (1988)).

Ash-Shafii also argues that his statements about Menge are absolutely privileged because he made them within the scope of his legislative role for Highland Park.  The absolute legislative privilege is conceptually similar to the absolute immunity but traces its origins to the common law rather than statute.  "Communications deemed absolutely privileged are not actionable, even when spoken with malice." *Kefgen v. Davidson*, 241 Mich. App. 611, 618, 617 N.W.2d 351, 356 (2000). Justified by the need to permit elected officials to express their views without legal repercussions, Michigan has recognized as absolutely privileged statements by members of legislative bodies, including members of a city council, during the exercise of their official duties.  *Froling v. Carpenter*, 203 Mich. App. 368, 371-72, 512 N.W.2d 6, 8-9 (1993).

Menge does not address Ash-Shafii's claim of legislative privilege.  He does argue that Michigan's grant of immunity does not extend to legislators and city council members who act with gross negligence.  He misconstrues the applicable statutes.  It is true that Michigan's Government Tort Liability Act does not offer immunity to certain public officials whose conduct amounts to "gross negligence that is the proximate cause of the injury or damage."  Mich. Comp. Laws § 691.1407(2)(c); *Odom v. Wayne Cnty.*, 482 Mich. 459, 479-80, 760 N.W.2d 217, 228 (2008).  But that carveout does not supply the applicable standard for judges, legislators, and highest executive officials whose grant of immunity is set out in a separate subsection of the statute. Mich. Comp. Laws § 691.1407(5); *see also Baarck v. Rice*, No. 289061, 2010 WL 715841, at *5 (Mich. Ct. App. Mar. 2, 2010) ("[T]here is no gross negligence exception to immunity under MCL 691.1407(5).").

On the present record, Ash-Shafii is entitled to absolute immunity from liability for Menge's defamation claim.  His statement occurred during a regularly scheduled City Council meeting as part of the "Council Affairs" portion of the agenda.  Arguing against the First Amendment claim, Ash-Shafii contended that he possessed no authority to hire or fire police officers, and therefore his defamatory comments could not adversely affect Menge's rehire prospects.  That would tend to undermine his immunity defense.  But under the City's charter, the council is vested with the authority to "exercise all of the legislative powers of the City, except as otherwise provided by law, and shall provide for the public peace and health, and for the safety of persons and property."  City of Highland Park Charter, § 5-1.  Ash-Shafii's comments about Menge, even if untrue, were related to his responsibility as a council member to provide oversight of the City's police department.  Michigan courts, albeit in unpublished opinions, have held that statements made by a council member during a regular council meeting fall within the scope of their lawful authority.  *See Parakh v. Harrison Twp.*, No. 306053, 2013 WL 6670846, at *7 (Mich. Ct. App. Dec. 17, 2013) (holding that town trustees were entitled to legislative immunity from allegedly false statements they made at board meetings); *cf. Jones v. City of Walled Lake*, No. 350997, 2021 WL 2494000, at *7 (Mich. Ct. App. June 17, 2021) (holding that a city manager's report at a council meeting, which allegedly defamed the plaintiff, was part of his official duties); *Hicks v. Washington*, No. 309148, 2013 WL 440100, at *3 (Mich. Ct. App. Feb. 5, 2013) (holding that a school board president was absolutely immune from allegations that she deliberately lied about the plaintiff in responding to inquiries from another employer because "it must be within a school board member's authority to speak to the public about issues affecting the school she is tasked with overseeing").

Ash-Shafii's statements also were privileged.  Michigan courts construe the absolute privilege doctrine narrowly.  *See Kefgen*, 241 Mich. App. at 618, 617 N.W.2d at 357.  And the court of appeals has cautioned that "[t]he fact that a public official is a member of a legislative body and is in attendance at a duly convened proceeding of such body does not afford him an invitation to undertake an unrestricted slanderous campaign against whomever he pleases, concerning whatever he pleases." *Gidday v. Wakefield*, 90 Mich. App. 752, 756, 282 N.W.2d 466, 468 (1979).  Instead, "the statements at issue must be made by the public official while in the process of carrying out an official duty." *Ibid.*  The question therefore collapses into much the same inquiry as the absolute immunity inquiry above: was Ash-Shafii's statement during the "Council Affairs" portion of the agenda part of his official duties?  As above, the answer is yes. The fact that Ash-Shafii's concerns about Menge's employment with the City were not pertinent to any pending agenda item is not dispositive.  *See Chonich v. Ford*, 115 Mich. App. 461, 469, 321 N.W.2d 693, 697 (1982) ("If members of legislative bodies are not free to speak their minds on those matters within their domain because the subject of their remarks is not officially part of an agenda, a body's majority could stop important information from ever coming before the public eye simply by refusing to place the item on the agenda."); *see also Froling*, 203 Mich. App. at 372, 512 N.W.2d at 9 ("The fact that defendant's statements were not made during a debate on an agenda item or in response to comments by another person does not defeat the privilege."). Examples of conduct so extreme as to amount to an unprivileged "unrestricted slanderous campaign" mentioned in *Gidday* as defeating the privilege simply are not evident in this record.

The rules of legislative privilege and legislative immunity bar Menge's defamation claim, which must be dismissed.

III.

The plaintiff has abandoned his claim based on an alleged violation of the Due Process Clause of the Fourteenth Amendment via 42 U.S.C. § 1983.  Fact questions preclude summary judgment for the defendant on the plaintiff's section 1983 claim based on the theory of retaliation in violation of the First Amendment.  Legislative immunity and privilege bar the defamation claim.

Accordingly, it is **ORDERED** that the defendant's motion summary judgment (ECF No. 103) is **GRANTED IN PART AND DENIED IN PART**.  Count I of the amended complaint stating a claim based on a violation of the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment and Count II of the amended complaint are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 22, 2025

- 22 -