UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MENGE,

                Plaintiff,                                      Case Number 23-11339

v.                                                             Honorable David M. Lawson

KHURSHEED ASH-SHAFII,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF SAMEER SOMAL

Plaintiff Brian Menge, a former police detective with the City of Highland Park, Michigan, brings a claim against defendant Khursheed Ash-Shafii, a Highland Park city councilman, alleging that Ash-Shafii unlawfully retaliated against him in violation of the First Amendment because of Menge's successful settlement of a prior lawsuit against the City. The retaliation consisted of statements published by Ash-Shafii falsely accusing Menge of stealing money from the City's criminal forfeiture fund while Menge was a police officer there. Menge proposes to call at trial Sameer Somal, a purported damages expert, to testify to the amount of damages Menge incurred to his income, reputation, and psyche as a result of Ash-Shafii's false statements. The defendant moves to exclude the testimony, arguing that Mr. Somal does not meet the requirements of Evidence Rule 702. The record furnishes an adequate foundation for Mr. Somal to testify about the cost of restoring Menge's online reputation. However, he has not supplied a factual basis or a reliable methodology to offer an opinion on the other components of damages Menge seeks. The motion will be granted in part and denied in part.

I.

The facts of the case were discussed in the opinion adjudicating the defendant's motion for summary judgment (ECF No. 120) and need not be repeated here. The present motion challenges the admissibility of the proposed opinion testimony of the plaintiff's named expert witness, Sameer Somal.

Mr. Somal is the CEO of Blue Ocean Global Technology, a company that assists individuals and entities with building and repairing their online reputation. He has co-authored Continuing Legal Education (CLE) programs about defamation and related topics and is a former member of the Legal Marketing Association (LMA) and the Education Advisory Council (EAC). Other than that, the submissions of the parties indicate little about his background, and they have not attached further biographical information to the motion papers.

Mr. Somal opined that Menge suffered "significant" damages based on defendant Ash-Shafii's alleged retaliatory statements. Mr. Somal separated the damages into four categories: economic, rehabilitative, reputational, and emotional distress. He determined that Menge suffered at least $283,500 in economic damages. To arrive at this figure, he "conservatively estimate[d]" that Menge lost the opportunity to work with eight to ten attorneys on approximately seven investigative projects each at an average of $1,000 per project. Then, he extrapolated a total loss from the date Menge's claim accrued to a date three years from the date of his report. Somal next assessed that it would cost $180,000 to rehabilitate Menge's reputation (assessed at $15,000 per month over a twelve-month period), and that his reputational damages range from $550,000 to $750,000. Somal also opined that Menge suffered $250,000 to $300,000 in emotional distress damages.

The defendant argues that Mr. Somal should not be allowed to testify to these opinions because his damages calculations are unreliable and unduly speculative. He points out that Mr. Somal did not consult Menge's 2023 tax return or other financial documents, such as the Request for Payment forms submitted in conjunction with each defense investigation Menge conducted in his work as a private investigator, which would show that he did not experience a drop-off in his work. Ash-Shafii also faults Mr. Somal for failing to review the plaintiff's testimony that "everybody knows that [Ash-Shafii's] lying and it was false and fake." Menge dep., ECF No. 104-3, PageID.3265.

Ash-Shafii also contends that Mr. Somal's opinion regarding the cost of rehabilitating Menge's online rehabilitation is unreliable and devoid of any methodology, principally because he never personally assessed whether the defamatory statements could be viewed readily on the internet such that rehabilitation would be necessary. He adds that Somal's conclusion that Menge is entitled to $550,000 to $700,000 lacks any discernable methodology. Finally, he asserts that Ash-Shafii is not qualified to opine on Menge's emotional distress because he is not a doctor.

The plaintiff concedes that Mr. Somal's opinion on emotional distress damages should not be allowed. However, he disputes each of the other arguments. He points out that Mr. Somal reviewed ample evidence, including five years of Menge's tax returns, the deposition testimony of attorney Dennis Whittie, and interviews with Menge's former colleagues at the Highland Park Police Department. Attorney Whittie's interview provides critical support for Mr. Somal's conclusion regarding his economic damages, he says, because Whittie testified that that he had refrained from referring "at least" two cases to Menge. He also insists that Mr. Somal has deep experience as a financial analyst and many of the shortcomings identified by the defendant more

properly are matters that go to the weight that a jury should ascribe to Mr. Somal's testimony rather than its admissibility.

II.

Expert witness testimony generally may be admitted at trial if — assuming other requirements are satisfied — it is helpful to the jury. Fed. R. Evid. 702(a) (stating that the testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). Expert testimony about damages is no exception.

There are basic rules that must be applied, however, which in this case do not point to overall admissibility. As a general matter, "expert" testimony consists of opinions or commentary grounded in "specialized knowledge," that is, knowledge that is "beyond the ken of the average juror." *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016); Fed. R. Evid. 702. Such testimony is governed by Evidence Rule 702, which was modified in December 2000 to reflect the Supreme Court's emphasis in *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on the trial court's gate-keeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies to an opinion based on specialized knowledge. Before expert witness testimony may be received, the proponent must demonstrate that, more likely than not, the testimony is "(a) helpful to the trier of fact, (b) 'based on sufficient facts or data,' and (c) 'the product of reliable principles and methods' that (d) have been 'reliably applied' to the 'facts of the case.'" *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting Fed. R. Evid. 702 (2011)). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine

whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Rule 702 was amended in 2023 to reinforce the idea, sidestepped sometimes by some judges, that Evidence Rule 104(a) entrusts the court with deciding whether the admissibility criteria have been satisfied, rather than treating them as "questions of weight" to be determined by the factfinder. Fed. R. Evid. 702 advisory committee's notes to 2023 amendments; *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."). However, "nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection." Rule 702 advisory committee's notes to 2023 amendments.

"Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. In fact, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Ibid.*; *see, e.g.*, *Wood v. Wal-Mart Stores East, LP*, 576 F. App'x 470, 472 (6th Cir. 2014) (holding that there was "ample reason" to conclude that a non-scientific expert's testimony was reliable and would assist the jury where the witness had professional experience dealing with building codes as a commercial architect); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (holding that the district court properly admitted testimony from expert regarding experience designing driver's enclosures for transit buses).

An expert witness's testimony also must be relevant and reliable. *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) (citing *Daubert*, 509 U.S. at 589). However, the 2000 Amendments to Rule 702 did "not alter the venerable practice of using expert testimony to educate

the factfinder on general principles." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. Rule 702 allows an expert to "testify in the form of an opinion *or otherwise*" (emphasis added), which means that the expert may share his or her special knowledge with the factfinder in areas that might extend beyond the information known to the average person. *See, e.g.*, *Redmond v. United States*, 194 F. Supp. 3d 606, 615 (E.D. Mich. 2016) (stating that an expert's testimony could be helpful to the jury if the information is "beyond the ken of common knowledge") (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994)). When an expert's testimony does not take the form of an opinion, but rather focuses on "educat[ing] the factfinder on general principles," application of the foundational elements in Rule 702 takes on a different cast. Fed. R. Evid. 702 advisory committee's notes to 2000 amendments.

An expert witness's opinion also must be based on record facts "as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citing Fed. R. Evid. 702 (explaining that expert testimony must be based on "sufficient facts or data" and the "product of reliable principles and methods")). However, "it is not an abuse of discretion to admit expert opinion based on allegedly erroneous facts when there is some support for those facts in the record." *In re Kirvan*, No. 21-1250, 2021 WL 4963363, at *5 (6th Cir. Oct. 26, 2021) (quotation marks and citation omitted).

A. Economic Damages

Ash-Shafii objects first to Mr. Somal's assessment of Menge's economic damages of $283,500. Mr. Somal opined that Menge was entitled to economic damages in that amount based on Mr. Somal's own "conservative[] estimate" that he lost the opportunity to work over the next three years with between eight and ten attorneys. He reckoned that each of these attorneys would have retained Menge for at least six to eight projects per year for an average of $1,000 per project.

Ash-Shafii asserts that this testimony is unreliable because it strays from the facts of the case. He asserts that Mr. Somal failed to review certain "Request for Payment" forms that are submitted in indigent criminal cases to obtain payment for Menge's work on an investigation and did not review Menge's 2023 tax return. He also faults Mr. Somal for failing to account for Menge's own testimony that no one believed Ash-Shafii's accusations. Taken together, these factors would demonstrate that Menge's business did not suffer because of any defamation, he says.

These points may all be grounds for impeachment, but as Menge points out, they do not necessarily fatally undermine the admissibility of Somal's testimony. The problems with Mr. Somal's testimony are more basic. For one, Mr. Somal does not appear to be assessing the economic damage to Menge's investigation business based on any independent body of expertise — that is, based on any knowledge of the legal field in the metro Detroit region. He does not offer any foundation for innate or acquired knowledge of the practices for assignment or retention of investigators in indigent criminal defense cases or the networking customs among defense attorneys. Instead, his conclusions ultimately are based on "estimate[s]" of Menge's lost work, which he deems "conservative." He projected that Menge lost the opportunity to work with between eight and ten attorneys per year, but the source of this estimate is entirely unexplained and does not correspond with any evidence in the record. Mr. Whittie, the attorney who testified that he stopped using Menge's services for a time, could only recall one other attorney who delayed hiring Menge. Whittie dep., ECF No. 103-21, PageID.2928. In fact, he testified that "no other attorneys" have ever told him they were refraining from using Menge, even attorneys who were aware of Ash-Shafii's allegations. *Id.* at 2927. Even Menge testified that he was not aware of any individuals who retained his services previously but no longer are doing so due to Ash-Shafii's comments. Menge dep., ECF No. 103-6, PageID.2446-47. The only attorneys he could name that

ever stopped using his services are Whittie and attorney Lillian Diallo. *Id.* at 2448. It would be one thing if Mr. Somal's estimate were based on some sampling fraction of Menge's total client base that may have heard Ash-Shafii's remarks, but there is no evidence that Mr. Somal possessed information with that level of detail about Menge's clientele. Similar issues are evident in Mr. Somal's apparent assumption that each of these clients would have given Menge six to eight projects per year. The source for that estimate is entirely unexplained.

This is not to say that an economic damages award of the scale suggested by Mr. Somal would be inappropriate as a matter of law. It might be justified if there is competent evidence to support it at trial. But Rule 702 still requires an expert to articulate some methodological basis before he may present his testimony to a jury. And his work must bear some relation to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30. The danger of allowing Mr. Somal's opinion based on his calculations, which appear at this point to result from inputs plucked from thin air, is that it could suggest to the jury damages that do not in fact exist. In a supplemental report (ECF No. 113), placed on the docket without additional briefing or leave of Court, Mr. Somal explains that Menge still may have experienced economic damages due to the loss of opportunity to expand his work. But this observation still does little to provide insight on the source of his own figures.

Moreover, with proper foundation, calculating Menge's economic damages would not necessarily even require expert testimony. Trial witnesses could testify about the effects of Ash-Shafii's defamation on Menge's businesses and his attorney can develop testimony about the size of his business and the comparative reduction in revenue. A jury properly then may compute the effect of any defamation with basic arithmetic — the same presumably used by Mr. Somal in his

calculations. But because Mr. Somal's economic damages testimony is not grounded in the facts of the case, he will not be permitted to testify on that topic.

B. Rehabilitation Damages

Ash-Shafii next asserts that Mr. Somal offered no methodology for his opinion that a twelve-to-eighteen-month rehabilitation campaign, costing approximately $180,000, will be necessary to rehabilitate Menge's online reputation. He points out that the recording of the City Council meeting containing the offending comments only has been viewed approximately 300 times on Facebook, and Mr. Somal never searched for references to Menge on Google to determine the extent of the spread of the alleged defamatory statements on the internet.

Again, these are good grounds for impeachment, but they do not warrant excluding Somal's testimony on this point. Ash-Shafii does not appear to take issue with Mr. Somal's qualifications as an expert in the field of online reputation management, and Mr. Somal's report contains a sufficiently clear basis for his $180,000 estimate. He explains that his team would have to conduct ongoing analysis and testing on important "keywords" related to Menge, and as part of their work to rehabilitate his reputation, the team would create "backlinks" — apparently prioritized by search engine algorithms — to more prominently highlight certain favorable results. In his report he quoted a cost of $15,000 a month for twelve months for these tasks. This number may well be excessive, but Mr. Somal, by dint of his knowledge of the field, is qualified to offer his view. *Cf. Ludwin v. Proman*, No. 20-81755, 2023 WL 315909, at *2 (S.D. Fla. Jan. 19, 2023) (permitting Mr. Somal to testify about the costs of a reputational repair campaign).

Ash-Shafii faults Mr. Somal for failing to assess the extent of the spread of the defamatory content before coming up with this estimate. However, it does not appear that the amount of work necessary to address harmful online content is dependent on the volume of material circulating on the internet. Moreover, Mr. Somal did opine that it was problematic that the alleged defamatory

video still was published to Facebook and explained that the fact court documents mentioning the defamatory statement were readily accessible on the internet "adds another layer of complexity to the rehabilitation process." ECF No. 108, PageID.3747. Somal's opinion as to the costs of rehabilitating Menge's reputation satisfies Rule 702, and he will be permitted to testify on this point.

C. Reputational Damages

Ash-Shafii also takes issue with Mr. Somal's conclusion that Menge is entitled to $550,000 to $750,000 in damages based on more generalized harm to his reputation. He argues that Mr. Somal described no methodology used to support this figure other than his knowledge of verdicts in other cases. Mr. Somal's report and deposition offer little clarity about how he arrived at these figures.

In his report, Somal stated that "there is no set standard to determine the actual value associated with [reputational damages]" and that calculating damages in this area "is subjective." *Id.* at PageID.3747-48. He then explained that in his experience, a "solid structure" for assessing damages would consider three "rings": Menge's immediate contacts, his prospective contacts, and strangers. "Adding the three reputational rings together," he "calculate[d] and estimate[d] that damages" totaled to "no less than $550,000 - $750,000." *Id.* at PageID.3749. How he calculated a value for each ring is not explained, and his deposition does not shed much further light, but it appears that the figures may be based on his review of damages awards in other defamation cases. *See* Somal dep., ECF No. 104-5, PageID.3596 ("So I — I, again, see this as an obvious case based upon my work as a litigation consultant where compensatory damages have been awarded, and they should be awarded here."). This method appears consistent with how Somal apparently sought to calculate damages in another case where he was retained as an expert. *See Ludwin*, 2023 WL 315909, at *2. The court excluded that opinion, stating that Mr. Somal is not a lawyer

and using other verdicts is not a recognized method of calculating damages in any given defamation action. *Ibid.* Notably, that method also would be problematic because it would not be based on the facts of the instant case.

This opinion suffers from the twin faults of no stated methodology and no factual tether. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citing Fed. R. Evid. 702 (explaining that expert testimony must be based on "sufficient facts or data" and the "product of reliable principles and methods")). Mr. Somal will not be permitted to testify about this opinion at trial.

III.

Except for the topic of the cost of repairing online reputational damage, the plaintiff has not offered a sufficient foundation for the proposed opinions of his named expert witness.

Accordingly, it is **ORDERED** that the defendant's motion to exclude testimony of Sameer Somal (ECF No. 104) is **GRANTED IN PART AND DENIED IN PART**. Mr. Somal will be permitted to testify about the cost of repairing the plaintiff's online reputational damage if a proper foundation is laid at trial. His other opinions stated in his disclosure report will be **EXCLUDED**.

                                                s/David M. Lawson
                                                DAVID M. LAWSON
                                                United States District Judge

Dated:   July 22, 2025